**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

EXIDORE WABO, *

Plaintiff, *

v. * Civil Action No. 8:25-cv-1997-PX

THE SALVATION ARMY,
*
Defendant.
***

## MEMORANDUM OPINION

Pending in this employment discrimination action is The Salvation Army's motion to transfer this matter to the United States District Court for the Eastern District of Virginia. ECF No. 20.[1] The motion is fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion to transfer is denied.

### I. Background

Plaintiff Exidore Wabo ("Wabo") lives in Maryland, and for over ten years, worked in The Salvation Army's IT Department. ECF No. 1 ¶¶ 3, 20–23. In 2014, The Salvation Army promoted him to Divisional IT Manager responsible for overseeing IT operations for company locations in Washington D.C., Maryland, Virginia and West Virginia. *Id.* ¶ 22. After a corporate restructuring in 2021, Wabo reported directly to Paul Gilliam, and Gilliam's nephew, Michael, directly reported to Wabo. *Id.* ¶¶ 24–25.

---

[1] Also pending is Plaintiff Exidore Wabo ("Wabo")'s motion for leave to file a sur-reply. ECF No. 23. Under this Court's Local Rules, "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." D. Md. Loc. R. 105.2(a). Although "[s]ur-replies are disfavored in this District[,]" *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013), they "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citation omitted). Wabo does not point to any new arguments raised in The Salvation Army's reply. ECF No. 23. And, after having reviewed the proposed sur-reply at ECF No. 23-2, the Court is confident that if accepted, the sur-reply would not change the Court's analysis. Thus, the motion to file a sur-reply is denied.

In 2022, Wabo filed a formal grievance against Paul Gilliam for "ongoing harassment and discrimination," prompting the Salvation Army to switch Wabo's direct report from Paul Gilliam to Joseph Crawford, Secretary of Finance and IT. ECF No. 1 ¶¶ 29, 31. Crawford, however, commented negatively about Wabo's heritage, accent, age and appearance. *Id.* ¶ 33. Wabo reported Crawford's misconduct to Human Resources ("HR"). *Id.*

In 2023, Wabo sought a nonspecific "reasonable accommodation" arising from an ankle injury he had sustained. ECF No. 1 ¶ 34. Crawford denied the request, and Wabo complained to HR in early 2024. *Id.* ¶¶ 35–36. Evidently, Wabo had been placed on a performance improvement plan ("PIP") at some point. *Id.* ¶ 37. He was "denied access" to the PIP, and could not meet its requirements; Crawford, in turn, denied Wabo an "alternative work schedule" otherwise granted to all Salvation Army employees. *Id.* ¶¶ 37–38.

That same year, Wabo had been involved in a dispute regarding the proposed termination of another employee, Jeffrey Samoya. ECF No. 1 ¶ 39. Wabo recommended Samoya's firing, which was "authorized by the highest internal authority." *Id.* ¶¶ 40, 44. Nonetheless, Crawford overruled Wabo, and after a heated exchange between Wabo and Samoya, Crawford directed Wabo to go home. *Id.* ¶ 47. HR next opened an investigation on Wabo, and on July 15, 2024, abruptly terminated him. *Id.* ¶¶ 49, 59. Michael Gilliam replaced Wabo. *Id.* ¶ 62.

From this, Wabo sues The Salvation Army for race and national origin discrimination and "disparate treatment," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 (Counts I and II), common law "retaliation" (Count IV) and intentional infliction of emotional distress (Count III). *Id.* ¶¶ 73–101. The Salvation Army answered the Complaint and moved to transfer the matter under 28 U.S.C. § 1404(a). ECF Nos. 19 & 20. For the following reasons, the motion is denied.

## II. Analysis

28 U.S.C. § 1404(a) permits a court to transfer a civil action "to any other district or division where it might have been brought or to any district or division to which all parties have consented." To prevail on a transfer motion, the movant must demonstrate by a preponderance of the evidence that transfer would promote both convenience and the interests of justice. *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 680–81 (D. Md. 2010) (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)) (internal quotation marks omitted). The defendant may not rely on conclusory allegations of hardship to meet this burden. Rather, it must show, by affidavit or otherwise, "the hardships [it] would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel*, 198 F. Supp. 2d at 712).

When deciding the question of transfer, the Court first considers whether the action could have been brought in the requested forum. *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (4th Cir. 2008). If venue is proper in the requested forum, the Court next considers: "(1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (citing *Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256–62 (E.D. Va. 1988)). Unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984).

As to the first consideration, the parties do not meaningfully dispute that the action could have been brought in the Eastern District of Virginia. ECF No. 20 at 5; ECF No. 21 at 12; *see*

*also* 28 U.S.C. § 1391(b)(2), (c)(2). Accordingly, the Court considers the remaining § 1404(a) factors in turn.

**A. Plaintiff's Choice of Venue**

Generally, the "plaintiff's forum choice of venue is 'entitled to substantial weight.'" *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). "This is particularly true where 'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *Kimber v. Plus3 IT Sys., LLC*, No. CV ELH-18-3046, 2019 WL 1518970, at *4 (D. Md. Apr. 5, 2019) (quoting *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013). Not so if "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch*, 237 F. Supp. 2d at 617.

When viewing the Complaint most favorably to Wabo, he had been the Division Supervisor for a geographic area which included Maryland. ECF No. 1 ¶ 22. But most, if not all, relevant events took place in Alexandria, Virginia. *Id.* ¶¶ 10, 13. Wabo also resides in Maryland, *id.* ¶ 10, and so the Court accords his forum choice commensurate deference. *See Lynch*, 237 F. Supp. 2d at 617.

**B. Witness Convenience and Access**

The second factor, witness convenience, is "[p]erhaps the most important factor to be considered by a court." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). The central witnesses – Paul, Deanna and Michael Gilliam – all work in Alexandria, Viriginia. ECF No. 20-1 ¶¶ 7–9. But only Paul and Deanna reside in Alexandria; Michael Gilliam lives in York, Pennsylvania. *Id.* The remaining two witnesses, Jeffrey

Samayoa and Joseph Crawford, live in Washington, D.C. and Raleigh, North Carolina, respectively. *Id.* ¶¶ 10–11. Given that all witnesses are proximate to either forum, the inconvenience of allowing the case to proceed here is slight. *See Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005) (finding this factor neutral in part because of the geographic proximity of Maryland and the Eastern District of Virginia). Nor does the Salvation Army's contention that "no reason" exists to "force" the witnesses to travel to Maryland persuade the Court otherwise. ECF No. 20 at 6. Bare assertions of inconvenience will not disturb Wabo's choice of forum. *See Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 138 (D. Md. 2024) (denying motion to transfer where the defendant "merely cite[d] the general inconvenience associated with a commute from Northern Virginia to Baltimore"). Last, to the extent the witnesses are employed by The Salvation Army, their convenience is entitled to even less weight. *See Holmes v. Live Nation Ent., Inc.*, No. 1:25-CV-01138-JRR, 2025 WL 2879579, at *4 (D. Md. Oct. 9, 2025) ("the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial" (quoting *CV Restoration, LLC v. Diversified Shafts Sols., Inc.*, No. CV ELH-16-2102, 2016 WL 6648750, at *5 (D. Md. Nov. 10, 2016)). Accordingly, this factor counsels against transfer.

### C. Convenience of the Parties

Because of the proximity between the two fora, this factor is a wash. *See Lynch*, 237 F. Supp. 2d at 618 ("Due to the relative closeness of the transferor and transferee forums, neither party would be greatly inconvenienced if the litigation were to continue in either jurisdiction."). About 25 miles lie between the Alexandria and Greenbelt courthouses, a distance that can be traveled by car in about a half hour. Thus, this factor does not support transfer.

### D. Interests of Justice

Finally, the interests-of-justice factor "encompass[es] all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009) (quoting *Howard Univ. v. Watkins*, Civ. No. DKC-06-2076, 2007 WL 763182, at *5 (D. Md. Mar. 12, 2007)). This includes, when relevant, "questions of judicial economy, the avoidance of inconsistent judgments, relative docket congestion, and comparative knowledge of the applicable law." *Bell v. CSX Transportation, Inc.*, 758 F. Supp. 3d 390, 395 (D. Md. 2024). The Salvation Army focuses on comparative knowledge of the applicable law and relative docket congestion, and so will the Court. ECF No. 20 at 7–8.

The Salvation Army first argues that because the common law claims will necessitate application of Virginia law, the case ought to be tried in Virginia. ECF No. 20 at 7; ECF No. 1 ¶¶ 93–101. But the Complaint also brings federal statutory claims not dependent on state law. ECF No. 1 ¶¶ 73–92. Nor does the Court find Virginia's "rocket docket" dispositive. *See Int'l Painters & Allied Trade Indus. Pension Fund v. Marrero Glass & Metal Inc.*, No. CV ELH-18-452, 2019 WL 423409, at *6 (D. Md. Feb. 1, 2019) (explaining that docket conditions do "not command substantial weight"). True that overall, cases proceed to trial 20 months faster in the Eastern District of Virginia than the District of Maryland. *See* United States Courts, *Table T-3—U.S. District Courts–Trials Federal Judicial Caseload Statistics*, (June 30, 2026), https://www.uscourts.gov/data-news/data-tables/2026/06/30/statistical-tables-federal-judiciary/t-3. But even so, this fact alone does not compel transfer. *See Collins*, 748 F.2d at 921. Accordingly, when weighing all § 1404(a) factors, the Court denies the motion.

## III. Conclusion

For the foregoing reasons, Defendant's motion to transfer to the Eastern District of Virginia is denied.

A separate Order follows.

11/19/2026
Date

/s/
Paula Xinis
United States District Judge